IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAIRA LUJAN-CHAVEZ,

    Petitioner,

vs.                                                         No. 2:21-cv-01231-WJ-JHR
                                                              (No. 2:07-cr-00472-WJ)

UNITED STATES OF AMERICA,

    Respondent.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the Emergency Petition for Issuance of Writ *Coram Nobis* filed by Petitioner Maira Lujan-Chavez on December 3, 2021 ("the Petition") **[CV Doc. 1; CR Doc. 48],** the United States' Response **[CV Doc. 2],** and Petitioner's Reply **[CV Doc. 12].** The Court will deny the Petition and will enter final judgment dismissing this case with prejudice.

**Factual and Procedural Background**

On December 2, 2006, at approximately 3:39 p.m., United States Border Patrol Agent Christopher Dooley was assigned to the Interstate-25 checkpoint in Las Cruces, New Mexico. **[CR Doc. 1 at 1].** Maira Lujan-Chavez entered the I-25 primary checkpoint area driving a 2006 blue Chrysler 300 bearing temporary New Mexico plate number 8761753. Ms. Lujan-Chavez's minor daughter was a passenger in the vehicle. **[CR Doc. 1 at 1].** During routine immigration questioning, Agent Dooley noticed that Ms. Lujan-Chavez was acting nervous and asked for and received her consent to look inside the trunk of the vehicle. **[CR Doc. 1 at 1].**

1

Agent Dooley conducted a systematic inspection of the vehicle with his government assigned K9 "Jessie." **[CR Doc. 1 at 1].** K9 Jessie alerted to the presence of narcotics in the vehicle. A subsequent search of the trunk of the vehicle resulted in the seizure of approximately 60 kilograms of a green leafy substance concealed within an oversized speaker box. **[Doc. 1 at 1].** Agent Dooley field-tested the contents of the green leafy substance, which tested positive for marijuana. **[CR Doc. 1 at 1].**

Maira Lujan-Chavez was arrested and was charged on December 4, 2006, by Criminal Complaint, with knowingly possession with intent to distribute a controlled substance, "to-wit, approximately 60 kilograms of marijuana, a Schedule I controlled substance." **[CR Doc. 1 at 1].** A Grand Jury subsequently indicted Ms. Lujan-Chavez with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), and 18 U.S.C. § 2 on March 15, 2007. **[CR Doc. 13].**

On May 31, 2007, Ms. Lujan-Chavez entered into a Plea Agreement, pleading guilty to the crimes charged in the Indictment. **[CR Doc. 25].** The Plea Agreement, signed by Ms. Lujan-Chavez and her counsel, provided that Ms. Lujan-Chavez would be truthful in providing information about her citizenship status. **[CR Doc. 25 at ¶ 9].** A change of plea hearing was held before United States Magistrate Judge Leslie Smith on May 31, 2007. **[CR Doc. 26].** During the plea colloquy, the following exchange took place between Magistrate Judge Smith and Ms. Lujan-Chavez:

> **Magistrate Judge Smith**: "Now, are you a citizen of the United States?"
> **Defendant**: "Uh, no."
> **Magistrate Judge Smith:** "You should understand that if you plead guilty to a felony, there is an excellent chance you could be deported from the United States, do you understand that?"
> **Defendant:** "Yes."

**[CV Doc. 2, Exhibit 1].** Magistrate Judge Smith found that Defendant understood the consequences and that Defendant's plea was a knowing and voluntary guilty plea. **[CR Doc. 26].**

Maira Lujan-Chavez was sentenced on February 13, 2008. **[CR Doc. 38].** During the sentencing hearing and in Ms. Lujan-Chavez's presence, the Court imposed a sentence of "probation: 5 years; at the time of deportation, probation will become unsupervised." **[CR Doc. 38 at 1].** Final Judgment was entered on the sentence on February 29, 2008. **[CR Doc. 39].** The Judgment imposed a sentence of 5-years of probation with standard conditions of supervision. **{CR Doc. 39 at 2].** The Judgment also provided the following Special Condition of Supervision:

> "The Defendant must maintain contact with the Probation Department
> as a condition of her probation, until deportation. Upon deportation, the
> term of probation shall become unsupervised."

**[CR Doc. 39 at 3].**

During the plea and sentencing phases of the criminal case, Ms. Lujan-Chavez was represented by attorney Joseph J. (Joaquin) Rey, Jr., who grew up in El Paso and practiced criminal defense law in the El Paso area for a period of 51 years. Mr. Rey died on March 14, 2015.[1]

Ms. Lujan-Chavez's probation was terminated on August 15, 2011. **[CR Doc. 41].** Ms. Lujan-Chavez was deported in 2020. **[CV Doc. 12].**

On March 11, 2021, new counsel entered an appearance on behalf of Ms. Lujan-Chavez, and requested access to the criminal file, which was granted by the Court. **[CR Doc. 41].** The Emergency Petition for Issuance of Writ of Coram Nobis ("Emergency Petition") was then filed on December 3, 2021. **[CV Doc. 1; CR Doc. 48].** The Emergency Petition seeks relief "[i]n order

---

[1] The information provided is taken from Mr. Rey's Legacy online obituary. The Court takes judicial notice of the contents of the obituary. Fed. R. Evid. 201(b).

to preserve the status quo pending hearing on this petition, and to avoid the irreparable injury that will result from her leaving the United States[.]" **[CV Doc. 1 at 9].**[2]

The Emergency Petition seeks relief on the basis of ineffective assistance of her now-deceased counsel.  **[CV Doc. 1 at 2-7].**  Ms. Lujan-Chavez contends that no discussion of her immigration status ever took place and, had she known she could be deported, she would not have entered the guilty plea.  **[CV Doc. 1].**

### *Padilla v. Kentucky* is Not Retroactively Applicable

In this case, Ms. Lujan-Chavez claims that she is entitled to relief because her counsel violated the standards of representation established in *Padilla v. Commonwealth of Kentucky,* 559 U.S. 356 (2010). **[CV Doc. 1 at 2].**  She contends that her counsel failed to affirmatively advise her of the immigration consequences of a plea as required in *Padilla* and, had she known that she would be deported, she would not have entered her guilty plea. **[CV Doc. 1 at 2-7].**  The record in this case refutes Ms. Lujan-Chavez's contentions and clearly shows that everyone, including Ms. Lujan-Chavez, know that she would be deported.  More importantly, however, Ms. Lujan-Chavez's sentence became final more than two years before the decision in *Padilla* and the *Padilla* rule is not retroactively applicable to her plea.  The standards adopted in *Padilla* do not apply and Ms. Lujan-Chavez may not seek *coram nobis* relief based on *Padilla*.

In *Padilla*, the United States Supreme Court adopted rules for effective assistance of counsel in criminal cases where a defendant may face deportation as a collateral consequence of being adjudged guilty. 559 U.S. at 384-391. The Court concluded that counsel failing to comply

---

[2] Although the Petition seeks "emergency" relief to avoid injury that will result from her deportation, Ms. Lujan-Chavez's Reply states that she was deported at least one year prior to the filing of the Emergency Petition.  **[CV Doc. 12 at 1].**

with those rules violated the Sixth Amendment and could be found constitutionally ineffective under the standards set out in *Strickland v. Washington,* 466 U.S. 668 (1984).

Ms. Lujan-Chavez argues that her criminal defense counsel violated the requirements of *Padilla* both by affirmative misrepresentation and failure to advise and, therefore, provided ineffective assistance of counsel.  **[CV Doc. 1 at 1-7].** Perhaps it is easier to argue ineffective assistance of counsel after the attorney is deceased and can no longer defend his actions.  However, even without the ability to obtain testimony from the deceased lawyer, the record in this case makes it clear that everyone, including Ms. Lujan-Chavez, understood that she would be deported at the time her sentence was imposed in 2008.  The record of both the change-of-plea colloquy and the sentencing hearing expressly state that Ms. Lujan-Chavez would be deported. Ms. Lujan-Chavez admitted she understood that she would likely be deported during the plea colloquy:

> **Magistrate Judge Smith**: "Now, are you a citizen of the United States?"
> **Defendant**: "Uh, no."
> **Magistrate Judge Smith:** "You should understand that if you plead guilty to a felony, there is an excellent chance you could be deported from the United States, do you understand that?"
> **Defendant:** "Yes."

**[CV Doc. 2, Exhibit 1].**  Further, at the sentencing hearing, the Court expressly imposed a sentence of "probation: 5 years; at the time of deportation, probation will become unsupervised."  **[CR Doc. 38 at 1].**  The Judgment also explicitly provided the following Special Condition of Supervision:

> "The Defendant must maintain contact with the Probation Department as a condition of her probation, until deportation. Upon deportation, the term of probation shall become unsupervised."

**[CR Doc. 39 at 3].**    Ms. Lujan-Chavez's Affidavit **[CV Doc. 1 at 14-16]** directly contradicts here sworn statement made during the plea colloquy, as well as the record made during sentencing.

The Affidavit is tantamount to a "sham" affidavit and may be disregarded by the Court. *See, e.g., Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001).[3]

In the end, however, whether or not Ms. Lujan-Chavez's counsel met the requirements of *Padilla* does not matter because *Padilla* is inapplicable to Ms. Lujan-Chavez's Petition. Judgment was entered on Maira Lujan-Chavez's sentence on February 29, 2008. **[CR Doc. 39].** That Judgment became final fourteen days later, on March 14, 2008. Fed. R. App. P. 4(b)(1). The case of *Padilla v. Kentucky* was decided by the U.S. Supreme Court on March 31, 2010, more than two years later. 559 U.S. at 356. In *Chaidez v. United States,* the Supreme Court expressly considered the issue of whether the holding of *Padilla* applied retroactively to a criminal judgment that became final in 2008. 568 U.S. 342 (2013). The Supreme Court determined that the holding in *Padilla* that the Sixth Amendment requires defense counsel to advise a defendant about the risk of deportation does not apply retroactively to a defendant whose conviction became final before *Padilla* was decided. The Court expressly concluded that *Padilla* declared a new rule that answered an open question about the Sixth Amendment's reach in a way that altered the law and, therefore, could not be applied to representation by defense counsel prior to the decision. 568 U.S. at 347-354.

Ms. Lujan-Chavez's conviction and sentence became final before *Padilla* was decided. Because *Padilla* changed the law, Ms. Lujan-Chavez's counsel cannot be held to a standard that was not in existence at the time of the representation. *Chaidez*, 568 U.S. at 347-354. Therefore, Ms. Lujan-Chavez is not entitled to any relief based on *Padilla.*

---

[3] The Court does not intend to imply that Ms. Lujan-Chavez's affidavit is intentionally false. To be sure, given the passage of such a significant amount of time between sentencing and filing of the Emergency Petition it is certainly understandable if Ms. Lujan-Chavez has forgotten many details of the plea and sentencing hearings.

**Petitioner is Not Entitled To Issuance of a Writ of Error *Coram Nobis***

The lack of retroactive application of *Padilla* bars Ms. Lujan-Chavez's Petition in this case. In addition, the Petition is subject to denial because Ms. Lujan-Chavez does not meet the stringent requirements for issuance of a writ of error *coram nobis*.

A writ of *coram nobis* is an extraordinary remedy and relief is allowed only under compelling circumstances in order to achieve justice. *United States v. Morgan,* 346 U.S. 502, 511 (1948); *see also Klein v. United States,* 880 F.2d 250, 253 (10th Cir.1989) (Writ is available only to correct error that results in a complete miscarriage of justice.) Generally, courts will only issue the writ to correct errors of fact that, through no negligence on the part of the defendant, were not part of the original record and that would have prevented rendition of the judgment questioned. *See United States v. Johnson,* 237 F.3d 751, 755 (6th Cir.2001). To be entitled to coram nobis relief, the petitioner must demonstrate (1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which would probably have altered the outcome of the challenged proceeding had it been known. *Johnson,* 237 F.3d at 755.

Due to its exceptional nature, a petitioner must satisfy stringent criteria to obtain a writ of coram nobis. The petitioner must demonstrate that he exercised due diligence in raising the issue and that the information used to challenge the sentence or conviction was not previously available to her. *Klein,* 880 F.2d at 254. In addition, the prisoner must exhaust all otherwise available remedies, which includes seeking post-conviction relief under § 2255. J*ohnson,* 237 F.3d at 755; *Goldstein v. United States Parole Comm.,* 940 F. Supp. 1505, 1508 (C.D.Cal.1996). Finally, the writ is usually only applied in cases where the petitioner has served her sentence and is no longer in custody or has not yet begun serving the challenged sentence. *Johnson,* 237 F.3d at 755; *Igo v. United States,* 303 F.2d 317, 318 (10th Cir.1962).

7

The further a case progresses through the remedial steps available to a criminal defendant, the more stringent the requirements for vacating a final judgment. Thus, direct review affords the greatest latitude for review and an initial habeas petition is easier for a criminal defendant to litigate than a successive one. The writ of error *coram nobis* lies at the far end of the continuum. *United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012). Tenth Circuit precedent imposes a bar to *coram nobis* relief "unless relief under 28 U.S.C. § 2255 was unavailable or would have been inadequate." *United States v. Payne*, 644 F.3d 1111, 1112 (10th Cir. 2011). In other words, a claim pressed through a *coram nobis* petition is ordinarily barred if the petitioner previously raised the claim in a § 2255 motion but was unsuccessful or simply failed to pursue the claim under § 2255 when petitioner could have. *See United States v. Tarango*, 670 F. App'x 981, 981 (10th Cir. 2016) A writ of *coram nobis* may not be used to litigate issues that were or could have been raised on direct appeal or through collateral litigation, including a 28 U.S.C. § 2255 motion. A petition for writ of *coram nobis* must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence. *See United States v. Miles*, 923 F.3d 798, 804 (10th Cir. 2019); *United States v. Swindall*, 107 F.3d 831, 836 n.7 (11th Cir. 1997); *United States v. Camacho-Bordes*, 94 F.3d 1168, 1172–73 (8th Cir. 1996); *United States v. Bartlett,* Nos. 90-6345, 90-6351, 1990 WL 135645, at *1 n.* (4th Cir. Sept. 20, 1990).

A writ of error *coram nobis* is barred, first, because Ms. Lujan-Chavez failed to present her claim of ineffective assistance of counsel in a 28 U.S.C. § 2255 motion. As set out, above, Ms. Lujan-Chavez was aware that she likely would be deported both when she entered her guilty plea in 2007 and when she was sentenced in 2008. Further, her May 31, 2007, Plea Agreement expressly permitted her to file a 2255 motion for collateral review based on ineffective assistance of counsel.

**[CR Doc. 25 at 5].** Ms. Lujan-Chavez was aware of the fact of deportation and the facts giving rise to her ineffective assistance claim no later than when Judgment was entered in 2008, but did not appeal and failed to ever file any § 2255 motion for collateral review. Therefore, her Petition for a writ of *coram nobis* is barred by her failure to exhaust other post-conviction remedies. J*ohnson,* 237 F.3d at 755; *Goldstein,* 940 F. Supp. at 1508.

Second, Ms. Lujan-Chavez did not act diligently in bringing her *coram nobis* Petition. As previously noted, Judgment on Ms. Lujan-Chavez's conviction and sentence was entered in 2008. **[CR Doc. 39].** Petitioner Lujan-Chavez was apparently deported in 2020. **[CV Doc. 12 at 1].** Petitioner's current counsel appears to have been retained by or on behalf of Ms. Lujan-Chavez on March 5, 2021 **[CR Doc. 46]** and was granted access to review the criminal file on March 11, 2021. **[CR Doc. 47].** Yet the *coram nobis* Petition still was not filed until December 3, 2021. **[CV Doc. 1; CR Doc. 48].** The filing of the Petition more than 13 years after the final criminal Judgment and after Ms. Lujan-Chavez learned that she would be deported as a consequence of the conviction fails to show reasonable diligence in pursuing her claim. *Klein,* 880 F.2d at 254.

Petitioner Maira Lujan-Chavez's Petition for issuance of a writ of error *coram nobis* is barred: (1) because *Padilla* is not retroactively applicable; (2) because Ms. Lujan-Chavez failed to exhaust her § 2255 remedies; and (3) because Ms. Lujan-Chavez did not exercise due diligence in raising her claims. The stringent requirements for issuance of the extraordinary writ of error *coram nobis* are not met at this extremely late stage of the proceeding. *United States v. Tarango*, 670 F. App'x at 981.[4]

---

[4] The Court notes that Ms. Lujan-Chavez also purports to seek any relief available under the All Writs Act. **[CV Doc. 1 at 8-9].** However, the writ of *coram nobis* is the only remaining remedy available to Ms. Lujan-Chavez. *Johnson,* 237 F.3d at 755.

**IT IS THEREFORE ORDERED** that the Emergency Petition for Issuance of Writ Coram Nobis **[CV Doc. 1; CR Doc. 48]** is **DENIED** and the Court will enter final judgment dismissing this case with prejudice.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE